# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **WANDA SHELTON,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07cv00022 |
| | ) | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant. | ) | United States Magistrate Judge |

In this social security case, I will vacate the final decision of the Commissioner denying benefits and remand the case to the Commissioner.

## I. Background and Standard of Review

Plaintiff, Wanda Shelton, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Shelton protectively filed her application for DIB on or about April 27, 2004, alleging disability as of June 30, 2003,[1] due to torn ligaments in her left knee, panic attacks, depression and anxiety. (Record, ("R."), at 50-52, 53, 63, 79.) The claim was denied initially and upon reconsideration. (R. at 35-37, 40, 41-43.) Shelton then requested a hearing before an administrative law judge, ("ALJ"). (R. at 44.) The ALJ held a hearing on February 13, 2006, at which Shelton was represented by counsel. (R. at 416-34.)

By decision dated May 9, 2006, the ALJ denied Shelton's claim. (R. at 14-20.) The ALJ found that Shelton met the nondisability insured status requirements of the Act for DIB purposes through the date of his decision. (R. at 19.) The ALJ found that Shelton had not engaged in substantial gainful activity at any time relevant to his decision. (R. at 19.) The ALJ also found that the medical evidence established that during the relevant period, Shelton suffered from a severe musculoskeletal impairment related to her left knee injury, but that she did not have an impairment or combination

---

[1]At the administrative hearing, Shelton amended her application to request a closed period of disability from June 30, 2003, until December 5, 2004, because she returned to work full-time on December 6, 2004. (R. at 419.)

of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ found that Shelton's allegations regarding her limitations during the period at issue were not totally credible. (R. at 19.) The ALJ found that, during the period at issue, Shelton retained the residual functional capacity to perform light work[2] that did not require her to work at unprotected heights or around dangerous equipment or machinery; that did not require greater than occasional kneeling or crouching and that did not require climbing or squatting. (R. at 20.) The ALJ found that, during the time period at issue, Shelton was able to perform her past relevant work as a packer. (R. at 20.) Thus, the ALJ found that Shelton was not disabled under the Act and was not eligible for benefits during the period June 30, 2003, through December 5, 2004. (R. at 20.) *See* 20 C.F.R. § 404.1520(f) (2007).

After the ALJ issued his decision, Shelton pursued her administrative appeals, (R. at 413-15), but the Appeals Council denied her request for review. (R. at 5-8.) Shelton then filed this action seeking review of the ALJ's unfavorable decision, which now stands at the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2007). This case is before the court on Shelton's motion for summary judgment filed October 26, 2007, and the Commissioner's motion for summary judgment filed November 6, 2007.

---

[2]Light work involves lifting or carrying items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2007).

## II. Facts

Shelton was born in 1957, which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. § 404.1563(c). (R. at 50.) Shelton has a high school education and two years of college education. (R. at 69.) She has past relevant work experience as a certified nurse's assistant, ("CNA"), a customer service associate and a general laborer. (R. at 64.) She testified that she injured her left knee while working at Lowe's on June 30, 2003. (R. at 420.) She also testified that she underwent physical therapy and arthrosporic surgery on her left knee. (R. at 421.) She testified that she experienced panic attacks and depression. (R. at 425-26.) She also testified that she returned to work in December 2004 on a full-time basis. (R. at 430.)

Norman Hankins, a vocational expert, also was present and testified at Shelton's hearing. (R. at 430-33.) Hankins was asked to consider a hypothetical individual of Shelton's age, education, background training and experience, who had the residual functional capacity to occasionally lift items weighing up to 20 pounds and frequently lift items weighing up to 10 pounds. (R. at 431.) Hankins was asked to further assume that the hypothetical individual could only occasionally kneel, crouch, climb and squat and should not work at unprotected heights or around dangerous equipment or machinery. (R. at 431.) Hankins testified that such an individual could perform jobs as a waitress, a packer or a bagger and an inspector. (R. at 430.) The ALJ asked Hankins to consider that the same individual experienced pain which interfered with her ability to concentrate or persist at work tasks. (R. at 432.) Hankins testified that such an individual could not perform any of the enumerated jobs. (R. at 432.)

In rendering his decision, the ALJ reviewed medical records from Norton Community Hospital; Bon Secours St. Mary's Orthopedic Center; Wellmont Bristol Regional Medical Center; Wellmont Lonesome Pine Hospital; Dr. S.C. Kotay, M.D.; Dr. William A. McIlwain, M.D.; Lonesome Pine Physical Therapy; Nioca Stokes, R.N., a registered nurse; Cassandra Dingus, F.N.P., a family nurse practitioner; Dr. Thomas M. Bulle, M.D.; Dr. T. Banchuin, M.D.; Dr. Elizabeth Cooperstein, M.D.; Joseph Leizer, Ph.D., a state agency psychologist; and Dr. Randall Hays, M.D., a state agency physician.

On September 24, 2002, Shelton presented to the emergency room at Wellmont Lonesome Pine Hospital[3] with complaints of chest pain and right shoulder pain. (R. at 352-66.) A chest x-ray showed no acute cardiopulmonary abnormalities. (R. at 366.) On March 22, 2004, Shelton presented to the emergency room with complaints of left knee pain. (R. at 324-33.) X-rays of Shelton's left knee showed degenerative changes particularly of the medial compartment. (R. at 333.) On August 14, 2004, Shelton complained of a panic attack. (R. at 316-21.) She was diagnosed with acute panic attack and being peri-menopausal. (R. at 317.) On November 24, 2004, x-rays of Shelton's cervical spine showed mild degenerative disc disease at the C5-6 level. (R. at 315, 322.) An ultrasound of Shelton's upper abdomen was normal. (R. at 323.) On January 1, 2005, Shelton presented to the emergency room complaining of weakness and sleepiness. (R. at 306-12.) She was diagnosed with hypokalemia, (low blood potassium), and fatigue. (R. at 306.)

On July 1, 2003, Shelton presented to Norton Community Hospital after

---

[3]The record contains medical reports that do not pertain to Shelton. (R. at 334-42.)

injuring her left knee at work. (R. at 98-104.)  X-rays of Shelton's left knee showed no acute radiographic abnormality. (R. at 104.)  Shelton had limited range of motion and gait.  (R. at 98.) She was diagnosed with internal derangement of the left knee. (R. at 99.)

On July 14, 2003, Shelton sought treatment from Dr. S. C. Kotay, M.D., an orthopedist.  (R. at 108.) Dr. Kotay diagnosed possible medial collateral ligament injury and ordered an MRI. (R. at 108.) An MRI of Shelton's left knee showed a small joint effusion. (R. at 118.) The medial and lateral menisci appeared intact, the marrow signal was benign and the patella was in normal position.  (R. at  118.) Dr. Kotay diagnosed medial collateral ligament strain. (R. at 107.) On August 1, 2003, Shelton continued to complain of knee pain.  (R. at 107.) Dr. Kotay reported that Shelton had normal motion and was not "particularly tender" over the collateral ligaments, and there was no effusion. (R. at 107.) Dr. Kotay completed a certificate to return to work indicating that Shelton could return to work on August 20, 2003.  (R. at 110.)

On July 28, 2003, Dr. William A. McIlwain, M.D., examined Shelton's left knee.  (R. at 238-39.) Shelton had pain in her left knee on range of motion under stress with internal and external rotation. (R. at 239.) Her left knee had no significant swelling or crepitance.  (R. at 238.) Dr. McIlwain recommended a diagnostic arthroscopy. (R. at 239.) On September 10, 2003, Shelton underwent an arthroscopic surgery of her left knee and lateral retinacular release. (R. at 142-65.) On September 17, 2003, Shelton reported that she was doing well. (R. at 237.)

On October 14, 2003, Shelton complained of tenderness, swelling and

-6-

Case 2:07-cv-00022-PMS   Document 16   Filed 03/31/08   Page 6 of 15   Pageid#: 70

discomfort in her knee. (R. at 236.) Dr. McIlwain reported that Shelton's left knee had a significant limitation of motion. (R. at 236.) He recommended left knee manipulation. (R. at 236.) A lower extremity venous Doppler study showed no evidence of superficial or deep thrombophlebitis. (R. at 252.) On October 15, 2003, Shelton underwent brisement[4] of the left knee with manipulation under anesthesia. (R. at 119-41.) Shelton tolerated the procedure well. (R. at 120.) On October 28, 2003, Shelton still had limitation of motion of her left knee. (R. at 234.) Dr. McIlwain advised Shelton that this would not change unless she moved her knee constantly. (R. at 234.) X-rays of Shelton's left knee showed mild degenerative changes with no acute osseous abnormality. (R. at 251.) On November 3, 2003, Shelton still had some limitation of motion of her left knee. (R. at 233.) Shelton's patella was fairly mobile. (R. at 233.) On December 1, 2003, Shelton reported that she was having severe pain in her left knee and was having trouble performing her exercises secondary to pain. (R. at 231.) Shelton's range of motion of her left knee was from zero to 90 degrees, which Dr. McIlwain believed was adequate. (R. at 231.) X-rays of Shelton's left knee were negative. (R. at 250.)

On January 5, 2004, Dr. McIlwain reported that Shelton was finally showing improvement in her left knee. (R. at 229.) Shelton's knee was only minimally effused, it moved from 1 to 110 degrees easily, and it was cool and nonreactive. (R. at 229.) She had some slight tenderness around the more medial portal anteriorly, but her patella had no crepitance or subluxation. (R. at 229.) Dr. McIlwain released Shelton to return to work on January 6, 2004, at light duty with no climbing or pushing. (R.

---

[4]Brisement is the breaking up or tearing of anything, as of an ankylosis. An ankylosis is an immobility and consolidation of a joint due to disease, injury or surgical procedure. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 91, 235 (27th ed. 1988.)

-7-

at 230.) On February 9, 2004, Shelton complained of left knee pain. (R. at 227.) She had tenderness on the medial and lateral joint lines. (R. at 227.) X-rays of Shelton's left knee showed traction osteophyte formation, which involved the inferior patella. (R. at 248.) Dr. McIlwain reported that the internal derangement had resolved and that Shelton could perform work that did not involve climbing, squatting, lifting items weighing more that 15 pounds or pushing items weighing more than five pounds. (R. at 227.) Dr. McIlwain reported that Shelton had reached maximum medical improvement. (R. at 227.) X-rays of Shelton's left knee performed on January 5, 2004, were negative. (R. at 249.) On March 3, 2004, Dr. McIlwain reported that Shelton had swelling with limited range of motion upon extension secondary to discomfort. (R. at 225.) He further reported that Shelton could continue to work within her limitations and abilities, and he advised that she use a tall stool to give her knee some support. (R. at 223.) On April 27, 2004, Shelton was unable to do a straight leg raise with her left leg, and she had slight atrophy on the left side. (R. at 219.) Dr. McIlwain recommended arthrotomy with patellar realignment, lateral release and medial reef and shaving of the patella as needed. (R. at 219.) However, Shelton did not seek any further treatment for her knee problems.

On November 16, 2004, Cassandra Dingus, F.N.P., a family nurse practitioner, saw Shelton for complaints of abdominal distention, abdominal bloating, upper right quadrant pain and anxiety. (R. at 257-58.) Shelton had 5/5 muscle strength in her bilateral upper and lower extremities. (R. at 257.) Dingus diagnosed right upper quadrant pain, nausea, panic attacks, insomnia, constipation and neck pain. (R. at 258.) On December 1, 2004, Shelton complained of elevated blood pressure. (R. at 256.) She reported that she had not taken her Klonopin because things were "going

okay." (R. at 256.) She was diagnosed with hypertension, unclassified, and anxiety. (R. at 256.) On January 11, 2005, Shelton was diagnosed with hypertension, hyperlipidemia and hypokalemia. (R. at 255.)

On February 21, 2005, Dr. Thomas M. Bulle, M.D., saw Shelton for complaints of chest pain. (R. at 268-72.) Shelton underwent a stress test and a gated exercise test, which were both normal. (R. at 273-74.) Dr. Bulle diagnosed chest pain, palpitations, history of syncope, hypertension, history of hypokalemia and anxiety. (R. at 271.)

On March 15, 2005, Joseph Leizer, Ph.D., a state agency psychologist, indicated that Shelton suffered from a nonsevere anxiety-related disorder. (R. at 275-89.) He indicated that Shelton had no restrictions on her activities of daily living. (R. at 285.) He also indicated that Shelton had mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 285.) He indicated that Shelton had experienced no episodes of decompensation. (R. at 285.) Leizer reported that Shelton's allegations were not credible and that she should be able to perform all levels of work. (R. at 289.)

On March 15, 2005, Dr. Randall Hays, M.D., a state agency physician, indicated that Shelton had the residual functional capacity to perform light work. (R. at 290-98.) Dr. Hays indicated that Shelton would be limited in her ability to push and/or pull with her lower extremities. (R. at 291.) He indicated that Shelton could frequently climb ramps and stairs, balance and stoop and occasionally climb ladders, ropes and scaffolds, as well as kneel, crouch and crawl. (R. at 292.) No manipulative, visual or communicative limitations were noted. (R. at 292-93.) Dr. Hays further

indicated that Shelton should avoid concentrated exposure to work hazards. (R. at 294.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall v. Harris*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 9, 2006, the ALJ denied Shelton's claim. (R. at 14-20.)

The ALJ found that the medical evidence established that during the relevant period, Shelton suffered from a severe musculoskeletal impairment related to her left knee injury, but that she did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ found that, during the period at issue, Shelton retained the residual functional capacity to perform light work that did not require her to work at unprotected heights or around dangerous equipment or machinery; that did not require greater than occasional kneeling or crouching and that did not require climbing or squatting. (R. at 20.) The ALJ found that, during the time period at issue, Shelton was able to perform her past relevant work as a packer. (R. at 20.) Thus, the ALJ found that Shelton was not disabled under the Act and was not eligible for benefits during the period June 30, 2003, through December 5, 2004. (R. at 20.) *See* 20 C.F.R. § 404.1520(f) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907

F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Shelton argues that the ALJ erred by failing to give appropriate credence to her testimony and properly assess the effect of pain on her ability to perform substantial gainful activities. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief") at 5-7.)

The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be

> discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . .

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Shelton's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 18.) The ALJ noted that the medical evidence failed to reveal findings to support pain to the degree alleged. (R. at 18.) The ALJ noted that while Shelton reported having continued symptoms in March 2004 and April 2004, she was working part-time. (R. at 18.) Dr. McIlwain reported in January 2004 that Shelton's left knee was only minimally effused, moved from 1 to110 degrees easily and was cool and nonreactive. (R. at 229.) By February 2004, Dr. McIlwain opined that Shelton had reached maximum medical improvement and released her to limited light duty work. (R. at 227.) Based on this, I find that the ALJ considered Shelton's allegations of pain in accordance with the regulations. I further find that substantial evidence supports the ALJ's finding that Shelton's allegations of disabling knee pain were not totally credible.

I do not find, however, that substantial evidence exists to support the ALJ's finding that Shelton had the residual functional capacity to perform light work that did not require her to work at unprotected heights or around dangerous equipment, that did not require more than occasional kneeling or crouching and that did not require

-13-

climbing or squatting. (R. at 20.) The ALJ noted that he was giving significant weight to the state agency physician's opinion in determining Shelton's residual functional capacity. (R. at 18.) The state agency physician found that Shelton could perform light work that required only frequent climbing of ramps and stairs, balancing and stooping and only occasional climbing of ladders, ropes and scaffolds, kneeling, crouching and crawling. (R. at 292.) The state agency physician also noted that Shelton was limited in her ability to push and/or pull with her lower extremities. (R. at 291.) Dr. McIlwain also indicated that Shelton could not push items weighing more than five pounds. (R. at 230, 227.) The ALJ failed to mention this limitation. While an ALJ may, under the regulations, assign no or little weight to a medical opinion based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings, an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King*, 615 F.2d at 1020. Furthermore, this limitation was not included in the hypothetical questions posed to the vocational expert. Testimony of a vocational expert constitutes substantial evidence only if the expert's testimony is in response to a proper hypothetical question which fairly sets out all of a claimant's impairments. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

For the above stated reasons, I find that substantial evidence does not exist to support the ALJ's finding with regard to Shelton's residual functional capacity or the ALJ's finding as to Shelton's ability to perform her past relevant work.

*IV. Conclusion*

For the foregoing reasons, Shelton's and the Commissioner's motions for

-14-

summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and this case will be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion.

An appropriate order will be entered.

DATED: This 31st day of March 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE